AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with the Google Account<br>ZathanNexus@gmail.com that is stored at premises<br>controlled by Google LLC | )<br>)<br>)<br>)<br>)<br>)    Case No.   3:22-mc-1055 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information associated with account(s) ZathanNexus@gmail.com as described in Attachment A hereto,

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 554 | Outbound Smuggling |
| 13 U.S.C. § 305 | Unlawful Export Information |
| 18 U.S.C. § 1956 | Money Laundering |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Special Agent Matthew L. Peterson, DHS HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone at _7:30_ a.m./p.m. _____ *(specify reliable electronic means).*

Date: _11/08/2022_

*Jolie A. Russo*
*Judge's signature*

City and state:  Portland, Oregon

Honorable Jolie A. Russo, United States Magistrate Judge
*Printed name and title*

STATE OF OREGON     )
                      )  ss:              AFFIDAVIT OF MATTHEW PETERSON

County of Multnomah    )

### Affidavit in Support of an Application for a Search Warrant

I, Matthew Peterson, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I have been employed as a Special Agent (SA) by the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) since December 2010.   I am currently assigned to Global Trade Investigations Unit in the HSI office in Portland, Oregon, which investigates crimes related to the trafficking of weapons, money laundering, and other trade and financial crimes.   I have a B.A. in Political Science and an M.S. in Criminal Justice. Previously, from July 2017 to July 2022, I was assigned to the HSI office in The Hague, Netherlands, where I worked for five years facilitating weapons trafficking and money laundering investigations, among other matters.   Prior to my employment with HSI, I served as a Foreign Affairs Officer with the U.S. Department of State, beginning in January 2007.   My formal law enforcement training includes successfully completing the 23-week HSI basic training course at the Federal Law Enforcement Training Center in Glynco, Georgia.   During that training, I learned how to investigate weapons trafficking, smuggling, and money laundering crimes.   As such, I am familiar with ways that weapons are procured, smuggled, and distributed on the black market, including through the use of electronic communications platforms.

2.      I have worked with agents involved in numerous investigations involving trafficking in weapons, other contraband smuggling, and money laundering.   I have participated in searches of premises and electronic media, and assisted in gathering evidence pursuant to search warrants, including search warrants in multiple weapons trafficking investigations.

**Affidavit of Matthew Peterson**                            **Page  1**

3.      I submit this affidavit in support of an application for a search warrant authorizing the search of the **Subject Account,** ZathanNexus@gmail.com, as described in Attachment A hereto, for contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 554 (outbound smuggling), 13 U.S.C. § 305 (unlawful export information), and 18 U.S.C. § 1956 (money laundering) as described in B hereto.

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

5.      *Title 18, U.S.C. § 554* makes it a crime to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

6.      *Title 13, U.S.C. § 305* makes it a crime to knowingly fail to file or knowingly submit false or misleading export information through the Shippers Export Declaration (SED) (or any successor document) or the Automated Export System (AES).

**Affidavit of Matthew Peterson**                                                                 **Page  2**

7.      *Title 18, U.S.C. § 1956(a)(3)(A)* makes it a crime to conduct a financial transaction to promote the carrying on of a specified unlawful activity[1].

## **Relevant Electronic and Wire Communication Statutes**

8.      The relevant federal statutes involved in the disclosure of customer communication records for the requested data in the **Subject Account** are as follows:

a.      18 U.S.C. § 2703(a) provides, in part: "A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court of competent jurisdiction."

b.      18 U.S.C. § 2703(b)(1) provides, in part, that a governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication without required notice to the subscriber or customer if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court of competent jurisdiction.

c.      18 U.S.C. § 2703(c)(1) allows a governmental entity to obtain non-content subscriber information from a provider of electronic communication service or remote computing service when the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court of competent

---

[1] 18 U.S.C. § 1956(c)(7) The term "specified unlawful activity" means…section 554 (relating to smuggling goods from the United States)…

**Affidavit of Matthew Peterson**                                                    **Page 3**

jurisdiction, although that is not the only way in which a governmental entity can obtain subscriber information.

d.      18 U.S.C. § 2510(12) defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce," with certain exceptions not applicable here.

e.      18 U.S.C. § 2510(17) defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

f.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A), and 2711.   Specifically, this Court is a district court of the United States that has jurisdiction over the offense being investigated.   See 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**Border Search Authority**

9.      Parcels arriving into or leaving the United States may go through customs before being delivered to their destinations.   To facilitate this process, Customs and Border Protection (CBP) Officers are assigned to international mail and cargo facilities. These CBP Officers conduct routine examinations of international parcels as they enter or leave the United States before clearing them for delivery.

**Affidavit of Matthew Peterson**                                            **Page  4**

10.     Various laws and regulations have been enacted regarding searches at the border. Pursuant to Title 19, Code of Federal Regulations, Section 162.6, United States Customs Officers may conduct examinations of goods entering or leaving the United States without a search warrant, probable cause, or individualized suspicion to inspect items to verify the items specified in the Shipper's Export Declaration.   HSI Special Agents are granted this same authority, commonly known as "Border Search Authority."

### Statement of Probable Cause

11.     On or about September 23, 2022, CBP officers at the Los Angeles International Mail Branch examined a parcel declared as "Art Supplies" destined for the United Kingdom (UK).   "Marcos A Zavala," with an address in Portland, Oregon, was listed as the sender on the



shipping label and U.S. Postal Service (USPS) customs declaration.   CBP's search of the parcel

revealed it contained six Glock pistol slides, among other weapons components.

      12.     According to the U.S. Department of Commerce, these Glock weapons slides

require a valid export license prior to export.   Such a license would need to be declared on the

export paperwork associated with the shipment; thus, I believe that this shipment, falsely

declared as "art supplies," was an attempt to smuggle weapons components to the UK.   Based

on my training and experience, I know that criminal organizations, particularly in Europe, order

weapons components from U.S.-based black-market vendors due to the difficulty in obtaining

weapons in Europe.



      13.     While the name provided on the USPS customs declaration was provided as

"Marcos Zavala," the phone number provided on the form was (806) 670-2272.   According to

financial records from Onpoint Community Credit Union (CCU) in Portland, which I have

reviewed, (806) 670-2272 is the phone number for Michael Z. DIAZ.   The same OnPoint CCU application for DIAZ's bank account shows that his email account is the **Subject Account**.

14.     I searched DHS export databases for other shipments of "Art Supplies" from Portland to the UK in 2022.   I identified five additional shipments declared as "Art Supplies," apart from the above shipment that was found to contain Glock pistol slides.   One of those shipments was from Michael Z DIAZ, with a listed address of 2186 NW Glisan, Portland, OR 97210.   This parcel was shipped to the UK on or about June 27, 2022.   DIAZ's listed address is consistent with the address he provided in his OnPoint CCU account application: 2186 NW Glisan St, Apt 47, Portland, OR 97210.   Three of the other "Art Supplies" shipments, each purportedly sent by Marcos A. Zavala, have DIAZ's phone number listed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Affidavit of Matthew Peterson**                                                                                   **Page  7**

15.     Traces on the six Glock slides that were intercepted by CBP revealed they were sold to a Texas-based company, RSR Group, Inc.   An HSI agent, whom I have spoken with, contacted RSR Group and learned they were re-sold to a firearms retailer in Connecticut.   A different HSI agent, whom I have spoken with, visited the Connecticut-based firearms retailer, and learned the Glock slides were sold to "Michael Diaz" and shipped to the aforementioned Glisan St. address in Portland.   I observed the **Subject Account** in the billing information for the sale, which was provided to me from the Connecticut-based HSI agent.   Notably, the phone number provided on the seized Glock weapons shipment, 8066702272, is provided on the invoice.



16.     I received information from Coinbase, a U.S.-based cryptocurrency exchange, related to Michael DIAZ.   According to Coinbase records, the **Subject Account** is the email account DIAZ used to establish a Coinbase Bitcoin wallet.   The Bitcoin wallet was created on April 20, 2021, according to Coinbase records.   Based on my training and experience, I know that black market weapons vendors use cryptocurrency to receive payment for weapons.   As part of the know-your-customer process for the Bitcoin wallet, Coinbase received a copy of DIAZ's Texas driver's license, which reflects that his middle name is Zathan:



17.     In my review of DIAZ's driver's license photo, I recognized him from a Telegram account I had previously encountered related to this investigation, Zathan Nexus.   Specifically, during my open-source checks of the phone number provided on the seized weapons parcel, 806-670-2272, I encountered a post in a forum, Tumpik, in which the poster indicated that he or she is a "Black Market Vendor" that ships out of the "PNW" and can be contacted at 806-670-2272. The moniker associated with this post is "ZluttyBoyZ."   I believe, based on the context, that "PNW" is a reference to the Pacific Northwest.



18.     In my experience, black market vendors often use the same, or slightly altered

monikers across several platforms.   Accordingly, I searched other social media and encrypted

platforms for references to "ZluttyBoyZ."   I found a Telegram[2] account, @Zluttyboy, with the

screen name "Zathan Nexus"—which is consistent with the identifier in the **Subject Account**

(ZathanNexus@gmail.com).   The @Zluttyboy Telegram account similarly advertises he is a

"black market vendor," and sells "Drugs," "Toolys," "IDs," and other suspected contraband.   I

know, based on my training and experience, that "Toolys," alternatively spelled as "Toolies," is

slang for a gun.



[2] Telegram is an encrypted communications platform with headquarters in the United Arab Emirates.
Telegram is not known to cooperate with law enforcement and, from my perspective, is quickly becoming
the platform of choice for illicit sales—particularly weapons.

**Affidavit of Matthew Peterson**                                              **Page  10**

19.     I reviewed the media associated with the @Zluttyboy Telegram account, and observed a video of two males, one of whom appears to be DIAZ.   In the video, DIAZ appears to be counting one-hundred dollar bills, while his associate appears to point a pistol at the camera.   Some sample screenshots are provided for the court:



20.     My research on DIAZ revealed he has a criminal history that includes a felony conviction for aggravated robbery for shooting a victim during a robbery.   DIAZ currently has an active warrant for his arrest in Texas related to smuggling contraband.

**Affidavit of Matthew Peterson**                                                              **Page  11**

21.    As noted above, I identified several additional shipments of "Art Supplies' sent from Portland to the UK.   Three of those shipments, one of which was intercepted by CBP and found to contain Glock weapons slides, were sent on September 15, 2022, according to the export records.   In my review of financial records associated with an OnPoint CCU account established by DIAZ, I observed payments to the U.S. Postal Service in Portland on September 15, 2022.

| 09/15 | Debit Card Debit | | | |
| | 302271 USPS PO 40679000 74 PORTLAND OR 09-15-22 | | -60.84 | 965.49 |
| 09/15 | Debit Card Debit | | | |
| | 660694 USPS PO 40679000 74 PORTLAND OR 09-15-22 | | -194.98 | 113.92 |

22.    According to an investigator with the U.S. Postal Inspection Service, with whom I have spoken, the $194.98 USPS charge for postage associated with two shipments, EW009182827US and EW009182835US.   EW009182827US is the shipment that was intercepted to the UK that was found to contain the aforementioned Glock components.

23.    On October 26, 2022, I sent a preservation letter to Google to preserve all records related to the **Subject Account**.

<u>**Records Held by Provider**</u>

24.    In my training and experience, I have learned that Google provides a variety of on-line services to the public, including electronic mail ("e-mail") access.   Google allows subscribers to obtain e-mail accounts at the domain name gmail.com, like the e-mail account listed in Attachment A.   Subscribers obtain an account by registering with Google.   During the registration process, Google asks subscribers to provide basic personal information.   Therefore, Google's computers are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, e-mail transaction information, and

**Affidavit of Matthew Peterson**                                                          **Page  12**

account application information.   In my training and experience, such information may

constitute evidence of the crimes under investigation because the information can be used to

identify the account's user or users.

25.    A Google subscriber can also store with the provider files in addition to e-mails,

such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to

e-mails), and other files, on servers maintained and/or owned by Google.   In my training and

experience, evidence of who was using an e-mail account may be found in address books,

contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and

files.

26.    In my training and experience, e-mail providers generally ask their subscribers to

provide certain personal identifying information when registering for an e-mail account.   Such

information can include the subscriber's full name, physical address, telephone numbers and

other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of

payment (including any credit or bank account number).   In my training and experience, such

information may constitute evidence of the crimes under investigation because the information

can be used to identify the account's user or users.

27.    In my training and experience, e-mail providers typically retain certain

transactional information about the creation and use of each account on their systems.   This

information can include the date on which the account was created, the length of service, records

of log-in (i.e., session) times and durations, the types of service utilized, the status of the account

(including whether the account is inactive or closed), the methods used to connect to the account

(such as logging into the account via the provider's website), and other log files that reflect usage

of the account.   In addition, e-mail providers often have records of the Internet Protocol address

("IP address") used to register the account and the IP addresses associated with particular logins to the account.   Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

28.     In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.   E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.   In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

<u>**Nature of the Examination**</u>

29.     During its review of the information received from Google under the requested warrant, law enforcement will segregate the information into two groups: (i) information that is responsive to each warrant and that the government may therefore seize; and (ii) information that is not responsive to each warrant.   This review will be performed within a reasonable amount of time not to exceed 180 days from the date the government receives the information from Google. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court.

30.     Information that is responsive to the warrant will be copied onto a separate storage device or medium.   Responsive information may be used by law enforcement in the same manner as any other seized evidence.   Information that is not responsive to the warrant

will be sealed and stored on a secure medium or in a secure location.   Nonresponsive information will not be reviewed again without further order of the Court (e.g., subsequent search warrant or order to unseal by the district court).

31.     The government will retain a complete copy of the information received from Google for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering with, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

32.     The government has made no prior effort in any judicial forum to obtain the materials sought in the requested warrant.

## Conclusion

33.     DIAZ provided the **Subject Account** when ordering the Glock slides that were interdicted en route to the UK.   Moreover, he provided the **Subject Account** when establishing his Bitcoin wallet with Coinbase in April 2021, and provided the **Subject Account** when creating his bank account with OnPoint CCU in December 2021, which he later used to make payments to USPS on September 15, 2022—one of which was the USPS shipment of Glock weapons components sent to the UK.   I know, based on my training and experience, that weapons traffickers use email accounts to facilitate procurement, payment, and shipping related to illicit weapons deals.   Based on the foregoing, I have probable cause to believe that **Michael Zathan DIAZ** purchased Glock weapons components, unlawfully attempted to smuggle those weapons components to the UK by falsely declaring them as "Art Supplies," and that evidence, fruits, and instrumentalities of those violations will be located in the **Subject Account** as

**Affidavit of Matthew Peterson**                                                    **Page  15**

described above and in Attachment A.   I therefore respectfully request that the Court issue a

warrant authorizing the search of the **Subject Account**, as described in Attachment A, for the

items listed in Attachment B, and authorizing the examination and seizure of any such items

found.

34.      Prior to being submitted to the Court, this affidavit, the accompanying

application, and the requested search warrant were reviewed by Assistant United States Attorney

(AUSA) Greg Nyhus.   AUSA Nyhus advised me that in his opinion, the affidavit and

application are legally and factually sufficient to establish probable cause to support the issuance

of the requested warrant.


*/s/ Signed Pursuant to Fed. R. Crim. P. 4.1*
MATTHEW PETERSON
HSI Special Agent


Sworn to telephonically pursuant to Fed. R. Crim. P. 4.1 at ___7:30_____am/p~~m~~ on

November __4____ 2022.

*Jolie A. Russo*
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge


**Affidavit of Matthew Peterson**                                                                    **Page  16**

**ATTACHMENT A**

**Description of the Property to be Searched**

1.      **Subject Email Account:**  ZathanNexus@gmail.com

Information associated with the Google account connected with the email address

"ZathanNexus@gmail.com" (**Subject Email Account**) which is stored at premises controlled by

Google LLC ("Google" or "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain

View, California 94043.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Google LLC, to the government:**

1.      Google LLC (Google) shall disclose to the government the following information associated with the Google account having the email address ZathanNexus@gmail.com (**the Subject Account**), which is within Google's possession, custody, or control, including all records, files, logs, or information that have been deleted but are still available to Google, or that have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), for the time period April 1, 2021, to the date the search warrant is executed:

a.      The contents of all emails and chat messages associated with the Subject Account, including stored or preserved copies of emails or chat messages sent to and from the Account, draft emails, the source and destination addresses associated with each email or chat message, the date and time at which each email or message was sent or received, attachments to any e-mail or message sent or received, and the size and length of each email, including any and all emails including inbox, outbox, draft, sent, received, deleted, etc.

b.      All records or other information regarding the identification of the user or subscriber of the Subject Account, including the full customer or subscriber name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the Subject Account was created, the length of service, the IP address used to register the Subject Account, log-in IP addresses associated with session times and dates, account status, alternative or recovery e-mail addresses provided

**Attachment B**                                                                                                    **Page 1**

during registration, methods of connecting, log files, and means and source of payment

(including any credit or bank account number).

      c.     The types of service utilized.

      d.     Payment information, including billing address, shipping address, and

payment instruments, associated with the Subject Account.

      e.     All records pertaining to communications between Google and any person

regarding the Subject Account, including contacts with support services and records of

actions taken.

## II.    Information to be seized by the government:

2.     All information described above in Section I that constitutes evidence, fruits, or

instrumentalities of violations of 18 U.S.C. § 554 (outbound smuggling), 13 U.S.C. § 305

(unlawful export information), and 18 U.S.C. § 1956 (money laundering), from April 1, 2021, to

the date of the execution of the warrant, including the following:

      a.     Messages, communications, records, and files associated with or attached

to email or chat messages, and transactional data that constitute evidence of, or that may

have been used to facilitate, or that were capable of being used to commit or further,

violations of 18 U.S.C. § 554, 13 U.S.C. § 305, or 18 U.S.C. § 1956.

      b.     Invoices, statements, payment records, bills of lading, customs

declarations, or other shipping records related to the purchase or shipping of weapons or

other contraband subject to U.S. smuggling laws.

      c.     Communications that pertain to or are evidence of the purchase,

distribution, transfer, shipping, or receipt of weapons, weapons components, or other

contraband subject to smuggling laws.

d.      Information relating to who created, used, or communicated with the

account, including records about their identities and whereabouts.

e.      Information indicating the Account owner's or user's state of mind,

knowledge or understanding of laws, or willfulness as it relates to the crimes under

investigation.

## III.    Search procedure:

3.      The warrant will be executed under the Stored Communications Act, and in

particular 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Google shall disclose to the

government copies of the records and other information (including the content of

communications) particularly described in Section I of this attachment.

a.      Upon receipt of the information from Google, government personnel will

segregate the information into two groups: (i) information that is subject to seizure under

Section II of this attachment; and (ii) information that is not subject to seizure under

Section II.  This review will be performed within a reasonable period of time not to

exceed 180 days from the date that Google provides data in response to the warrant.  If

the government needs additional time to conduct this initial review, it may seek an

extension of time from the Court.

b.      Information that is subject to seizure under Section II of this attachment

will be copied onto a separate storage device or medium.  Such information may be used

by law enforcement in the same manner as any other seized evidence.  Information that is

not subject to seizure under Section II of this attachment shall be sealed by government

personnel and stored in a secure location.  Such information will not be reviewed again

**Attachment B**                                                                                      **Page 3**

without further order of the court (*e.g.*, a subsequent search warrant or order to unseal by the court).

      c.     The government will retain a complete copy of the information received from Google for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering with, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.